UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| In re SCANA CORPORATION PUBLIC SHAREHOLDER LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Civil Action No. 3:18-cv-00505-MBS<br><br>MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION TO ADD KEVIN MARSH AND STEPHEN A. BYRNE AS DEFENDANTS IN THIS ACTION |

**REDACTED VERSION**

- 1 -

## I. INTRODUCTION

Pursuant to Rule 21 of the Federal Rules of Civil Procedure ("Rule 21"), Lead Plaintiffs Meltzer Asset Management GmbH and City of Warren Police and Fire Retirement System (together, "Plaintiffs") request that the Court add Kevin Marsh ("Marsh") and Stephen A. Byrne ("Byrne") as defendants to this action. Marsh and Byrne are former officers of SCANA Corporation ("SCANA"), and both were complicit in the fraudulent cover up of the failed nuclear project. Recent developments and revelations in the discovery process have demonstrated that both also played a substantial causative role in the process that led to the Merger, by actively deceiving Defendants, SCANA's Board of Directors (the "Board"), about some of the financial and scheduling issues that led the Board to abandon the nuclear project, and by jumpstarting and pushing the process that led to the Merger without Board authorization or approval. Both have also recently admitted guilt to federal crimes of defrauding shareholders and misleading regulators. Thus, both should be added as defendants in the interests of judicial economy so that all of the breaches of fiduciary duty that damaged Plaintiffs and the class may be effectively litigated in this proceeding.

## II. RELEVANT STANDARDS

Under Rule 21, the Court may add a party at any time on motion by a party or on its own. "'In deciding whether to . . . add parties . . . under Federal Rule of Civil Procedure 21, courts ordinarily consider basic principles such as fundamental fairness and judicial economy, whether [adding a party] would prejudice any party or result in undue delay, and the threats of duplicitous litigation and inconsistent jury verdicts.'" *Urena v. Nationwide Ins. Co. of America*, 2017 WL

735583, at *5 (D.S.C. Feb. 24, 2017).[1]  "Whether to add or dismiss a party under Rule 21 is committed to the Court's sound discretion."[2]  *Id*.

Courts in this District take a broad view when addressing Rule 21 motions, especially when judicial economy would be served, the impact on discovery is minimal, and the proposed additional parties have an obvious connection to the litigation.  In *Urena*, the court was asked to add a party over whom it may not have jurisdiction.  Rather than exclude the party, the court noted that judicial economy would be served by joining the party and addressing jurisdictional issues when they ripened as the litigation progressed.  *Urena*, 2017 WL 735583, at *10-*11.  The court also rejected arguments that discovery was hampered by the late addition of the party because the opposing party failed to articulate how discovery would have developed differently if the party had been in the case from the outset.  *Id*. at *12; *see also Shulman v. Chaitman LLP*, 392 F. Supp. 3d 340, 360 (S.D.N.Y. 2019) (permitting addition of party where the case was still in its early stages and no depositions had been taken).

In *Barton v. Ellis*, 24 Fed. R. Serv. 2d 504 (D.S.C. 1977), the court permitted the plaintiff to add individual members of the board of directors of a state agency because the boards were originally named as party defendants, and certain other related state agencies.  *See also Lavian v. Haghnazari*, 884 F. Supp. 670, 674 (E.D.N.Y. 1995) (permitting addition of party under Rule 21 because it "would promote a merit-based resolution of the entire controversy between the parties, and would cause [the joining party] no prejudice because it ostensibly has been aware of this

---

[1]  Unless otherwise noted, all emphasis is added, and citations and footnotes are omitted.

[2]  Recent case law has suggested that a "'two-step analysis' is required when a motion to amend pleadings and join additional parties is filed after the scheduling order deadline," showing "good cause" under FRCP 16(b) and then "pass[ing] the requirements for amendment under" FRCP 15(a).  *Bruce v. Bank of America*, 2020 WL 7249876, at *1 (D.S.C. Oct. 22, 2020).  But the source of this newly imposed rule, *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298-99 (4th Cir. 2008), directed its holding only towards a motion to amend a pleading and not a Rule 21 motion.

lawsuit . . . since the commencement of the action"); *Kaminsky v. Abrams*, 41 F.R.D. 168, 171-72 (S.D.N.Y. 1966) (permitting addition of directors to corporate derivative suit even though they joined the board after the alleged misconduct because illegal conduct may have continued, and joinder would eliminate potential multiplicity of litigation).

All of these factors are present here. Judicial economy would be served by adding Byrne and Marsh to this action rather than forcing Plaintiffs to pursue a separate action against these two wrongdoers. There would be little to no impact on discovery, as Byrne and Marsh have already been participating in discovery, and discovery is still in its early stages. And both parties have an inescapable connection to this litigation given their roles in the fraudulent cover-up of the failed nuclear project and the flawed sales process that led to the Merger. Both are former officers of SCANA, and Marsh is a former director and chairman of the Board.

### III.    THE FACTS DICTATE THAT MARSH AND BYRNE SHOULD BE ADDED AS PARTIES

Defendants' fraudulent cover-up of the failed nuclear project is well documented in this Court. SCANA undertook the nuclear project in 2008 with Santee Cooper ("Santee") to construct two nuclear power plants at an estimated cost of $9.8 billion. *In re SCANA Corp. Sec. Litig.*, 2019 WL 1427443, at *1 (D.S.C. Mar. 29, 2019). To fund the project, SCANA convinced South Carolina lawmakers to pass the Base Load Review Act ("BLRA"), "which allowed the South Carolina Public Service Commission ("PSC") to approve utility rate increases to cover construction costs" of the nuclear project. *Id*. SCANA chose Westinghouse Electric Company ("Westinghouse") as lead contractor for the project. *Id*.

The nuclear project was beset from the outset by schedule delays and cost overruns. Declaration of Daniel J. Ballou filed herewith ("Ballou Decl."), Ex. A, Hagood Ex. 1, at 2.[3] As

---

[3]    All subsequent "Ex.__" references are to the Ballou Decl.

- 4 -

these issues piled up, Santee requested that Bechtel Corporation ("Bechtel") be retained to assess the project's viability. *Id.*; *SCANA*, 2019 WL 1427443, at *2. Bechtel provided a preliminary report to SCANA and Santee in October 2015, which assessed that "the current schedule is at risk," and recommended that the completion dates for Unit 2 of the nuclear project be extended 18 to 26 months and Unit 3 be extended 24 to 36 months. *Id*. Bechtel submitted its formal assessment on November 9, 2015, reiterating the same schedule extension recommendations. *Id*. at *3. At the behest of SCANA's outside counsel, Bechtel submitted a revised report on February 5, 2016, that removed information about the scheduling delays. *Id*.

Defendants were made aware of the Bechtel Report and its recommendations at meetings with the Santee board of directors on March 21, 2016 and June 20, 2016. Ex. A, Hagood Ex. 1, at 7-9; Ex. B, Hagood Tr. at 48:25-49:8, 57:7-17, 58:13-20, 76:9-77:1, 86:5-87:3. Nonetheless, "[t]hroughout 2016, [Marsh, Jimmy E. Addison, Byrne, Harold B. Stowe, Maybank Hagood, and James W. Roquemore] continued to assure the PSC, investors, and the public that the [nuclear p]roject" would be completed on time, that "they had been straightforward and honest about the challenges on the [nuclear p]roject, and that most of the issues had been resolved." *SCANA*, 2019 WL 1427443, at *3. These concealed facts reached "a critical mass" "at least by late 2016" when the "[f]ailure to meet the deadlines to become operational could have prohibited SCANA from qualifying for significant tax credits" critical to the project's cost target. Ex. C, Hagood Ex. 10 at 36:6-12.

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ In anticipation of potential negative outcomes, SCANA hired bankruptcy counsel, and engaged in extensive

discussions with Toshiba, Westinghouse, and Santee. *Id.*; Ex. F, Aliff Tr. at 97:19-98:6, 99:14-104:13. ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

On March 29, 2017, Westinghouse declared bankruptcy. Consolidated Amended Class Action Complaint (ECF No. 75) ("CSAC"), ¶82.[4]  On July 31, 2017, Defendants announced that they were abandoning the nuclear project. ¶87.  Thereafter, Defendants' fraudulent cover-up of the failed nuclear project was slowly revealed to the market, hitting a climax when the Bechtel Report was disclosed at the behest of South Carolina's governor. ¶90.  Disclosure of the Bechtel Report exposed the fact that SCANA's leadership, including Marsh and Byrne, had withheld material information about project delays and cost overruns from regulators and the market. *Id*. Firmly in the crosshairs of numerous civil, regulatory, legislative, and criminal investigations, Marsh and Byrne resigned from their positions with the Company on October 31, 2017, effective January 1, 2018.  ¶¶91, 95-98; Ex. H, SCANA03_00047529.  Thus, neither was an officer or director when Defendants voted to approve the Merger on January 2, 2018.

Plaintiffs filed the CSAC on October 15, 2019.  Since that date, information has come to light that demonstrates officer liability for both Marsh and Byrne.  On June 8, 2020, Byrne was accused of "intentional misrepresentations and omissions" that "deceived regulators and customers in order to maintain financing for the [nuclear] project and to financially benefit SCANA" and "allowed the project to continue until the contractor went bankrupt and the project was abandoned, resulting in billions of dollars of loss." Ex. I, Byrne Information at 1.  Byrne was charged with an extensive scheme to defraud customers and making materially "false and misleading statements to

---

[4]   All "¶" and "¶¶" references are to the CSAC.

the PSC, the ORS, the South Carolina State Government, the media and to SCANA's customers," amounting to mail fraud, wire fraud, and conspiracy. *Id*. at 6-10. Byrne pled guilty that same day.

On November 24, 2020, Marsh was also charged with conspiracy to commit mail fraud and wire fraud because he "hid the true state of the project . . . [t]hrough intentional and material misrepresentations and omissions." Ex. J, Hagood Ex. 8 at 1. Marsh was accused of hiding information about scheduling delays and cost overruns, securing "rate increases based upon misrepresentations and misleading statements that le[]d to fraudulently inflated bills to customers," "pa[ying] over $500 million of the $2.2 billion dollars customers paid to finance the construction project to shareholders in dividends" and burying the Bechtel Report. *Id*. at 7-8. Marsh was specifically accused of "the following overt act": "that on December 27, 2016, Toshiba issued a press release announcing a potential multi-billion dollar write-down related to Westinghouse's nuclear construction business. That same day . . . . M[arsh], and others received a confidential briefing from senior Westinghouse officials, during which those officials indicated the costs to complete the new units would be significantly higher than expected . . . . [that same day Marsh] received a separate briefing from a senior Toshiba official indicating that Toshiba could not absorb the financial hit suggested by new estimates . . . for the work remaining on the project" and Marsh "withheld the information" from regulators. *Id*. at 10. Marsh pled guilty on February 24, 2021. Ex. C, Hagood Ex. 10.

Plaintiffs have secured testimony at the outset of deposition discovery from Defendants Maybank Hagood and Gregory Aliff that has revealed that Marsh and Byrne also withheld material information from the Board concerning Westinghouse's and Toshiba's financial issues after the Board was made aware of Westinghouse's looming bankruptcy. Ex. B, Hagood Tr. at 86:5-11, 141:16-142:14, 144:18-22. ███████████████

███████████████████████████████

- 6 -

- 7 -

███████████████████████████████████████████████████

████████████████████████████████

Hagood and Aliff also testified that Marsh was responsible for pushing SCANA into a sales process as early as December 2016, when the facts he was concealing reached a "critical mass." Marsh jumpstarted "Project Sedona" by approaching the Board about preparing the Company for a sale in late 2016, representing that there were numerous potential buyers interested in the Company. Ex.F Aliff Tr. at 134:1-23, 135:14-23 ███████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████ Marsh thereafter repeatedly engaged with Dominion and other potential suitors even though he was not authorized to do so until October 2017. *Id*. at 206:2-14, 207:25-208:3. Aliff testified that if the Board had known that Marsh was withholding material information from it "we would have come to a different conclusion" about undertaking a sales process, "we would have asked a lot more questions, and we would have much more wanted to understand what was going on before we believed it was a prudent thing to do, to go out and see if there were interested parties." Ex. F, Aliff Tr. at 140:2-15.

Under South Carolina law, Marsh and Byrne owed fiduciary duties to shareholders coextensive with those owed by Defendants. S.C. Code Ann. §33-8-420. Their apparent misconduct as officers and active deception of the Board in the sales process was a breach of their fiduciary duties. They both withheld material information from the Board, and Marsh caused SCANA to undertake the sales process that led to the Merger. After being instructed to abandon efforts to sell the Company, Marsh undertook and continued discussions with Dominion and other potential buyers without Board authorization.

Under similar circumstances, courts have held that corporate officers committed breaches of fiduciary duty in the sales process. In *Mills Acquisition Co. v. Macmillan, Inc.*, 559 A.2d 1261, 1282-83 (Del. 1989), the Delaware Supreme Court held that two corporate officers, the Company's CEO and CFO (the same positions held by Marsh and Byrne, respectively), breached their fiduciary duties as officers by withholding material information from their board in the context of a sales process. Noting that "fiduciaries, corporate or otherwise, may not use superior information or knowledge to mislead others in the performance of their own fiduciary obligations," the court held that the officer had committed "a fraud upon the Board." *Id*. at 1283. The court further concluded the officer deception precluded good faith reliance "upon opinions or reports" of the deceptive officers because "when a board is deceived by those who will gain from such misconduct, the protections girding the decision itself vanish." *Id*. at 1283-84. Similarly, in *Gantler v. Stephens*, 965 A.2d 695, 708-09 (Del. 2009), the court held that a CEO, aided and abetted by the company's Vice President and Treasurer, breached his fiduciary duties by withholding due diligence information from potential bidders in a sales process, and then hiding his misconduct from the board.

As in *Mills* and *Gantler*, Marsh and Byrne are liable for committing a "fraud upon the Board" and therefore breaching their fiduciary duties to shareholders. Importantly, a finding that Marsh and Byrne deceived the Board in connection with the sales process, does not diminish Board liability. Defendants' obligation to maximize shareholder value requires them to not only "refrain from any act which breaches the trust reposed in them, but also to affirmatively protect and defend those interests entrusted to them. Officers and directors must exert all reasonable and lawful efforts to ensure that the corporation is not deprived of any advantage to which it is entitled." *Mills*, 559 A.2d at 1280-81. That means strict oversight of officers in the sales process; a "board [that] was torpid, if not supine, in its efforts to establish a truly independent auction . . . . materially

contributed to the unprincipled conduct of those upon whom it turned a blind eye."[5]  *Id*. at 1279-80.  Similarly, even if Marsh and Byrne did not conceal material facts from the Board, they would be as liable as Defendants for breaching their fiduciary duties to shareholders because they drove the process to serve their own self-interests – an effort to escape liability for their role in the fraudulent concealment of the failed nuclear project.  Thus, both should be joined as parties to this action.

## IV.    CONCLUSION

Plaintiffs respectfully request that, pursuant to Rule 21, the Court add Marsh and Byrne as defendants to this action.

S/ DANIEL J. BALLOU
MORTON & GETTYS
DANIEL J. BALLOU (SC Federal Bar No. 6125)
Fountain Park Place
331 E Main Street, Suite 300
Rock Hill, SC  29731
Telephone:  803/366-3388
803/366-4044 (fax)
dan.ballou@mortongettys.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DAVID T. WISSBROECKER
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
dwissbroecker@rgrdlaw.com

---

[5]  Even if the Board was misled by Marsh and Byrne as the fraudulent cover-up hit a "critical mass," they also remain liable for their role in the fraudulent cover-up because of their knowledge of the Bechtel Report and the cost overruns and schedule delays that preceded the Westinghouse bankruptcy.

- 10 -

        BRAGAR EAGEL & SQUIRE, P.C.
        LAWRENCE P. EAGEL
        MELISSA A. FORTUNATO
        810 Seventh Avenue, Suite 620
        New York, NY 10019
        Telephone: 212/308-5858
        212/486-0462 (fax)
        eagel@bespc.com
        fortunato@bespc.com

        CHAPPELL SMITH & ARDEN, P.A.
        MARK D. CHAPPELL
        GRAHAM L. NEWMAN
        2801 Devine Street, Suite 300
        Columbia, SC 29205
        Telephone: 803/929-3600
        803/929-3604
        mchappell@csa-law.com
        gneman@csa-law.com

        Attorneys for Plaintiff

DATED: May 7, 2021

4820-2825-7767.v1