EXHIBIT 1

No. 20-1954

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

In re SCANA CORPORATION PUBLIC SHAREHOLDER LITIGATION

METZLER ASSET MANAGEMENT GMBH, On Behalf of Themselves
and All Others Similarly Situated; CITY OF WARREN POLICE AND
FIRE RETIREMENT SYSTEM, Individually and on Behalf of All Others
Similarly Situated,

*Plaintiffs-Appellees*,

vs.

SCANA CORPORATION,

*Appellant*,

– and –

GREGORY E. ALIFF; JAMES A. BENNETT; JOHN F.A.V. CECIL;
SHARON A. DECKER; D. MAYBANK HAGOOD; LYNNE M. MILLER;
JAMES W. ROQUEMORE; MACEO K. SLOAN; ALFREDO TRUJILLO;
JIMMY E. ADDISON,

*Defendants*.

Appeal from the United States District Court
for the District of South Carolina
No. 3:18-cv-00505-MBS, The Honorable Margaret B. Seymour

PLAINTIFFS-APPELLEES' RESPONSE BRIEF

MORTON & GETTYS
DANIEL J. BALLOU
Fountain Park Place
331 E. Main Street, Suite 300
Rock Hill, SC  29731
Telephone:  803/366-3388
803/366-4044 (fax)
dan.ballou@mortongettys.com

ROBBINS GELLER RUDMAN
 & DOWD LLP
DAVID T. WISSBROECKER
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
dwissbroecker@rgrdlaw.com

Counsel for Plaintiffs-Appellees
[Additional counsel appear on signature page.]

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __20-1954__       Caption: __In re: SCANA Corporation Public Shareholder Litigation__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__City of Warren Police and Fire Retirement System__
(name of party/amicus)

_____

 who is _____Plaintiff-Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation?                   ☐YES ☑NO
     If yes, identify entity and nature of interest:


5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:


6.   Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
     party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
     caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
     corporation that owns 10% or more of the stock of the debtor.


7.   Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational
     victim of the criminal activity and (2) if an organizational victim is a corporation, the
     parent corporation and any publicly held corporation that owns 10% or more of the stock
     of victim, to the extent that information can be obtained through due diligence.


Signature: /s/ David T. Wissbroecker                 Date:        9/22/20

Counsel for: Plaintiffs-Appellees

Print to PDF for Filing

CERTIFICATE OF SERVICE

This is to certify that I have this 22nd day of September 2020, electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will notify all registered counsel.

I further certify that this document was served via electronic mail on the following persons at the email addresses shown below.

Jonathan R. Chally
King & Spalding, LLP
1180 Peachtree Street NE, Ste. 1600
Atlanta, GA 30309
jchally@kslaw.com

John Bielema
Bryan Cave Leighton Paisner LLP
1 Atlantic Center
1201 W. Peachtree Street, NW
14th Floor
Atlanta, GA 30309
john.bielema@bclplaw.com

John A. Jordak, Jr.
Alston & Bird, LLP
1 Atlantic Center
1201 W. Peachtree Street
Suite 4900
Atlanta, GA 30309
John.Jordak@alston.com

I.S. Leevy Johnson
Johnson, Toal & Battiste, PA
1615 Barnwell Street
P.O. Box 1431
Columbia, SC 29202
islj@jtbpa.com

Lawrence Eagel
Bragar Eagel & Squire P.C.
885 Third Avenue, Suite 3040
New York, NY 10022
eagel@bespc.com

_/s/ David T. Wissbroecker_
DAVID T. WISSBROECKER

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _20-1954_        Caption: _In re SCANA Corporation Public Shareholder Litigation_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Metzler Asset Mangement GmbH_
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                            ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
financial interest in the outcome of the litigation?                    ☐YES ☑NO
If yes, identify entity and nature of interest:


5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected
substantially by the outcome of the proceeding or whose claims the trade association is
pursuing in a representative capacity, or state that there is no such member:


6.    Does this case arise out of a bankruptcy proceeding?                ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
corporation that owns 10% or more of the stock of the debtor.


7.    Is this a criminal case in which there was an organizational victim?        ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational
victim of the criminal activity and (2) if an organizational victim is a corporation, the
parent corporation and any publicly held corporation that owns 10% or more of the stock
of victim, to the extent that information can be obtained through due diligence.


Signature: /s/ Lawrence P. Eagel                         Date:        9/22/2020

Counsel for: Metzler Asset Management GmbH

Print to PDF for Filing

CERTIFICATE OF SERVICE

     This is to certify that I have this 22nd day of September, 2020, electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will notify all registered counsel.

     I further certify that this document was served via electronic mail on the following persons at the email addresses shown below.

Jonathan R. Chally
King & Spalding, LLP
1180 Peachtree Street NE, Ste. 1600
Atlanta, GA  30309
jchally@kslaw.com

John Bielema
Bryan Cave Leighton Paisner LLP
1 Atlantic Center
1201 W. Peachtree Street, NW
14th Floor
Atlanta, GA  30309
john.bielema@bclplaw.com

John A. Jordak, Jr.
Alston & Bird, LLP
1 Atlantic Center
1201 W. Peachtree Street
Suite 4900
Atlanta, GA  30309
John.Jordak@alston.com

I.S. Leevy Johnson
Johnson, Toal & Battiste, PA
1615 Barnwell Street
P.O. Box 1431
Columbia, SC 29202
islj@jtbpa.com

     /s/ *Lawrence P. Eagel*
     Lawrence P. Eagel

     Counsel for Appellees

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF ISSUES ...................................................................2

STATEMENT OF CASE ......................................................................3

    A.    Summary of Factual Allegations ..........................................4

    B.    Summary of Relevant Proceedings ......................................8

    C.    Summary of Other Litigation Concerning the Nuclear Project ..........16

    D.    Recent Communications with SCANA ..............................19

SUMMARY OF ARGUMENT ...........................................................20

STANDARD OF REVIEW .................................................................23

ARGUMENT ...................................................................................24

I.    This Court Lacks Jurisdiction .....................................................24

    A.    There Is No Case or Controversy ......................................24

    B.    SCANA Seeks this Court's Substantive Review of an
           Interlocutory Order ........................................................26

    C.    SCANA's Interest in This Litigation Is Moot in Light of
           Plaintiffs-Appellees' Offer to Allow SCANA to Intervene ...............31

II.    The District Court Correctly Ruled that SCANA Has No Interest in
    This Litigation that Would Require Intervention ..........................33

    A.    The District Court Correctly Ruled That Plaintiffs-Appellees'
           Claims Are Direct and Not Derivative ..............................33

- i -

**Page**

B.    SCANA Has No Interest in Any Derivative Claims ...........................40

C.    If SCANA Had an Interest in this Litigation, Its Interest Would
      Be Adequately Protected Without Intervention .................................42

CONCLUSION ........................................................................................................44

STATEMENT CONCERNING ORAL ARGUMENT .........................................44

CERTIFICATE OF COMPLIANCE .....................................................................47

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abrams v. Interco, Inc.*,
719 F.2d 23 (2d Cir. 1983) ...................................................32

*Arizonans for Official English v. Arizona*,
520 U.S. 43 (1997)...................................................24, 31

*Arkansas Teacher Ret. Sys. V. Countrywide Fin. Corp.*,
75 A.3d 888 (Del. 2013) ...................................33, 37, 38, 40

*Arkansas Teacher Retirement Sys. v. Caiafa*,
996 A.2d 321 (Del. 2010) ...................................11, 34

*BankWest, Inc., v. Baker*,
446 F.3d 1358 (11th Cir. 2006) ...................................31

*Brendle v. Gen. Tire & Rubber Co.*,
505 F.2d 243 (4th Cir. 1974) ...................................39

*Brown v. Nucor Corp.*,
785 F.3d 895 (4th Cir. 2015) ...................................23, 36

*Brown v. Stewart*,
S.E.2d 676, 684 (S.C. Ct. App. 2001) ...................................36

*Carolina First Corp. v. Whittle*,
539 S.E.2d 402 (S.C. Ct. App. 2000) ...................................38

*City of Charleston, S.C. v. Hotels.com, LP*,
586 F. Supp. 2d 538 (D.S.C. 2008) ...................................29, 30

*Clearwater Tr. v. Bunting*,
626 S.E.2d 334 (S.C. 2006) ...................................36

**Page**

*Crangle v. Marsh, et al.*,
No. 2017-CP-40-5791, slip op.
(S.C. Ct. Comm. Pls., Richland Cty. Sept. 6, 2018)...........................................17

*Damasco v. Clearwire Corp.*,
662 F.3d 891 (7th Cir. 2001) ...............................................................32

*Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*,
928 F.3d 325 (4th Cir. 2019) ...............................................1, 8, 9, 40

*Duckett v. Godinez*,
67 F.3d 734 (9th Cir. 1995) ................................................................18

*Flanagan v. United States*,
465 U.S. 259 (1984)..........................................................................26

*Flast v. Cohen*,
392 U.S. 83 (1968)............................................................................26

*Grayson v. Anderson*,
816 F.3d 262 (4th Cir. 2016) .............................................................40

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*,
485 U.S. 271 (1988)..........................................................................28

*Harriscom Svenska AB v. Harris Corp.*,
947 F.2d 627 (2d Cir. 1991) ..............................................................27

*Honig v. Doe*,
484 U.S. 305 (1988)..........................................................................31

*In re Flor*,
79 F.3d 281 (2d Cir.1996) .................................................................29

*In re Massey Energy Co. Deriv. & Class Action Litig.*,
160 A.3d 484 (Del. Ch. 2017) .....................................................*passim*

**Page**

*In re Primedia, Inc. Shareholders Litig.*,
    67 A.3d 455 (Del. Ch. 2013) .....................................................................12, 43

*In re Saba Software, Inc. Stockholder Litig.*,
    No. 10697-VCS, 2017 WL 1201108
    (Del. Ch. Apr. 11, 2017) ................................................................................11

*In re SCANA Corp. Derivative Litig.*,
    No. 3:17-cv-03166-MBS, 2018 WL 935673
    (D.S.C. Feb. 6, 2018) .....................................................................................41

*In re SCANA Corp. Derivative Litig.*,
    No. CV 3:17-3166-MBS, 2018 WL 3141813 (D.S.C. June 27, 2018) ..............16

*In re SCANA Corp. Derivative Litig.*,
    No. CV 3:17-3166-MBS, 2019 WL 4162377 (D.S.C. Sept. 3, 2019)..........17, 25

*In re Sierra Club*,
    945 F.2d 776 (4th Cir. 1991) ........................................................................23

*Iron Arrow Honor Soc'y v. Heckler*,
    464 U.S. 67 (1983)..........................................................................................31

*Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*,
    880 F. Supp. 2d 689 (D. Md. 2012)................................................................32

*Kowalski v. Gagne*,
    914 F.2d 299 (1st Cir. 1990)..........................................................................18

*Lambrecht v. O'Neal*,
    3 A.3d 277 (Del. 2010) ..................................................................................41

*Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*,
    957 F.2d 1153 (4th Cir. 1992) .......................................................................39

**Page**

*Louthian v. State Farm Mut. Ins. Co.*,
  493 F.2d 240 (4th Cir. 1973) ............................................................... 39

*Lyons v. Stovall*,
  188 F.3d 327 (6th Cir. 1999) ............................................................... 18

*Metex Corp. v. ACS Indus., Inc.*,
  748 F.2d 150 (3d Cir. 1984) ............................................................... 28

*Microsoft Corp. v. Baker*,
  __ U.S. __, 137 S. Ct. 1702 (2017) ...................................... 26, 27, 28, 31

*Patterson v. Witter*,
  821 S.E.2d 677 (S.C. 2018) ............................................................... 36

*Powell v. McCormack*,
  395 U.S. 486 (1969) ............................................................................ 31

*Rivers v. Wachovia Corp.*,
  665 F.3d 610 (4th Cir. 2011) ............................................................... 36

*Ross v. Reed*,
  719 F.2d 689 (4th Cir. 1983) .......................................................... 24, 32

*Santee Oil Co., Inc. v. Cox*,
  217 S.E.2d 789 (S.C. 1975) ............................................................... 38

*Shenandoah Valley Network v. Capka*,
  669 F.3d 194 (4th Cir. 2012) ............................................................... 26

*Simmons v. United Mortg. & Loan Inv., LLC*,
  634 F.3d 754 (4th Cir. 2011) .......................................................... 31, 33

*State of Cal. v. Harvier*,
  700 F.2d 1217 (9th Cir. 1983) ............................................................. 26

**Page**

*Stuart v. Huff*,
　　706 F.3d 345 (4th Cir. 2013) ...........................................................23

*Suarez Corp. Indus. v. McGraw*,
　　125 F.3d 222 (4th Cir.1997) ...........................................................28

*Todd v. Marsh, et al.*,
　　No. 2017-CP-40-06621, slip op.
　　(S.C. Ct. Comm. Pls., Richland Cty. Mar. 18, 2020) ...................18, 19

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
　　845 A.2d 1031 (Del 2004) ...............................................................35

*United States v. Wilson*,
　　631 F.2d 118 (9th Cir. 1980) ...........................................................17

*White Tail Park, Inc. v. Stroube*,
　　413 F.3d 451 (4th Cir. 2005) ...........................................................24

*Zimmerman v. Bell*,
　　800 F.2d 386 (4th Cir. 1986) ...........................................................32

## STATUTES, RULES AND REGULATIONS

Class Action Fairness Act,
　　28 U.S.C. §1332(d) ...............................................................1, 8, 9, 44

S.C. Code Ann.
　　§33-31-1105(a)(2) ...........................................................................25

Federal Rules of Civil Procedure
　　Rule 12(b)(1) ...................................................................................32
　　Rule 12(b)(6) ............................................................................10, 28
　　Rule 24 ...........................................................................................23
　　Rule 24(a) .......................................................................................13
　　Rule 24(a)(2) .....................................................................................1

**Page**

Federal Rules of Evidence
    Rule 201(d) ...................................................................................18
    Rule 201(f) ....................................................................................18

## JURISDICTIONAL STATEMENT

This is a shareholder class action filed by Plaintiffs-Appellees Metzler Asset Management GmbH ("Metzler") and City of Warren Police and Fire Retirement System ("Warren," together with Metzler, "Plaintiffs-Appellees") against Defendants Jimmy E. Addison, Gregory E. Aliff, James A. Bennett, John F.A.V. Cecil, Sharon A. Decker, D. Maybank Hagood, Lynn M. Miller, James W. Roquemore, Maceo K. Sloan, and Alfredo Trujillo (collectively, "Defendants") for breaches of fiduciary duty in connection with the sale of SCANA Corporation ("Appellant," "SCANA," or the "Company") to Dominion Energy, Inc. ("Dominion"). JA029.

This Court previously held that the United States District Court for the District of South Carolina ("District Court") has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), in that the putative class has more than 100 members, the amount in controversy exceeds five million dollars (exclusive of interest and costs) and the parties are minimally diverse in citizenship. *Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 336 (4th Cir. 2019); JA033 (¶16).

Appellant SCANA moved to intervene as a nominal defendant in this action under Fed. R. Civ. P. 24(a)(2). JA213. The District Court denied the motion. JA238-

43.   SCANA now appeals the District Court's denial of its motion to intervene. Plaintiffs-Appellees respectfully submit that this Court lacks appellate jurisdiction over SCANA's appeal for the reasons stated below. *See infra* §I.

## STATEMENT OF ISSUES

1.    Whether this Court lacks appellate jurisdiction because:

(a)    a South Carolina state court ruling and a pre-existing, preclusive judgment in the District Court have specifically divested SCANA of any possible legally cognizable interest in this matter, resulting in the absence of a case or controversy;

(b)    SCANA's appeal is simply a request for this Court to conduct an impermissible substantive review of the District Court's interlocutory decision on Defendants' motion to dismiss in violation of the final judgment rule; and

(c)    SCANA's appeal is moot as a result of Plaintiffs-Appellees' offer to allow SCANA to intervene permissively in the proceedings.

2.    Whether the District Court properly exercised its discretion to deny SCANA's motion to intervene where:

- 2 -

(a)     The District Court correctly ruled that Plaintiffs-Appellees' claims are direct and not derivative, resulting in SCANA having no litigable interest in this matter;

(b)     Even if the claims were derivative, the District Court has previously ruled and SCANA itself has conceded that SCANA no longer has an interest in any derivative claims; and

(c)     Even if SCANA had demonstrated a protectable interest in this litigation, SCANA has failed to demonstrate that its interest is not adequately represented by existing derivative litigation.

## STATEMENT OF CASE

This is a direct shareholder class action filed by Plaintiffs-Appellees on behalf of themselves and the former shareholders of SCANA.  JA243.  The operative complaint in this action (the "Complaint") alleges that Defendants – SCANA's former CEO and Board of Directors – breached their fiduciary duties to SCANA's shareholders in connection with the Merger.  JA029-33, JA077-79 (¶¶1-14, 162-67). In this litigation, Plaintiffs-Appellees are seeking to recoup monetary damages for SCANA's former shareholders.  JA033 (¶15), JA079.

4849-2842-4403.v11

## A.    Summary of Factual Allegations

In March 2013, SCANA began construction on a $9 billion project to build two new nuclear reactors at the Virgil C. Summer Nuclear Generating Station in Fairfield County, South Carolina (the "Nuclear Project") that was estimated to be completed in 2018.  JA044 (¶59).

On July 31, 2017, SCANA announced that it was abandoning the Nuclear Project.  JA052 (¶87).  Following the announcement, several public and private parties began investigating the factual circumstances leading to the abandonment of the Nuclear Project.  JA053-54 (¶¶88-95).

Soon, disturbing facts came to light demonstrating that Defendants and other Company insiders had, for years, known that the Nuclear Project was not viable and that there were significant issues with the design and construction of the Nuclear Project, but had concealed these negative facts from the public – all the while awarding themselves exorbitant compensation.  JA044-53 (¶¶60-89).

State and federal agencies, SCANA ratepayers, and SCANA shareholders initiated various criminal and civil investigations and lawsuits against Defendants and other Company insiders.  JA054-61 (¶¶95-109).  These investigations and lawsuits uncovered an extensive fraudulent cover-up by Defendants in connection with the

- 4 -

Nuclear Project. *Id.* As the fraud was revealed over the next few months, the Company's stock price dropped from $65.97 on July 31, 2017, to just $39.99 on July 31, 2018, the date of the shareholder vote on the Merger. JA030 (¶4). This decline wiped out billions of dollars in shareholder equity. *Id.*

In response to the mounting civil and criminal investigations and the risk that Defendants may be held personally liable for their misconduct by SCANA's shareholders, Defendants decided to quickly sell the Company. JA030-31, JA061-62 (¶¶5, 110-111). For Defendants, the Merger was an opportunity to extract personal benefits from Dominion, including: (i) indemnification and insulation from personal liability on litigation concerning the Nuclear Project; and (ii) lucrative change in control monetary payments. *Id.*

On October 1, 2017, SCANA's executives met with Dominion's executives. JA063 (¶116). At this meeting, the executives discussed a potential acquisition of SCANA by Dominion. *Id.*

Rather than pursuing a process for the benefit of SCANA's shareholders, approximately three months later, Defendants agreed to sell SCANA to Dominion for 0.6690 shares of Dominion common stock per share of SCANA common stock ("Merger Consideration"), and agreed to lock up the deal with preclusive deal

protection devices that would ensure that no competing offers would emerge.  JA063-65, JA068-70, JA072-77 (¶¶118-123, 130-136, 145-157).  In exchange, Defendants obtained: (i) a promise to indemnify Defendants for all claims, damages, and liabilities in connection with the Nuclear Project (JA075-76 (¶¶154-155); and (ii) an agreement to pay Defendants millions of dollars in special payments, bonuses, and performance-based payments that they would not have been able to receive because of the failed Nuclear Project, but became available as change of control payments in the Merger (JA051-52, JA070-72 (¶¶84-86, 137-144)).

While Defendants obtained significant benefits in connection with the Merger, in contrast, the Merger Consideration did not provide adequate consideration to SCANA's shareholders.  JA065-68 (¶¶124-129).  Using Dominion's stock price of $71.71 on July 31, 2018 (the date of the shareholder vote on the Merger), the Merger Consideration was equivalent to *$47.97* per SCANA share.  By contrast, on July 31, 2017, the day the market was made aware that SCANA was abandoning the Nuclear Project, SCANA shares closed at *$64.37*.  JA065-66 (¶124).  The consensus price target for SCANA was *$61.44* per share on December 6, 2017.  JA066 (¶126).  The average 12-month price target among analysts that had issued ratings on SCANA's stock in the year preceding the Merger was *$63.07*.  *Id.*

- 6 -

In addition, after the announcement of the Merger, Dominion negotiated extensively with regulators and legislators and eventually secured an agreement for Dominion to recover $2.5 billion of the cost from the failed Nuclear Project from SCANA ratepayers. JA031-32 (¶9). This value should have inured directly to SCANA shareholders, who incurred the costs from the failed Nuclear Project, and not to Dominion, which did not pay fair value for this asset. *Id.*

Moreover, in the Definitive Proxy Statement filed by SCANA with the SEC on June 15, 2018 (the "Proxy"), SCANA's own financial advisors estimated SCANA's value at ***$64.50 - $73.75*** utilizing the set of SCANA's financial projections that most likely represented SCANA's expected operating plan. This valuation range was well above the $47.97 value of the Merger Consideration on July 31, 2018. Proxy at 55.[1]

SCANA and Dominion announced the Merger on January 3, 2018. On June 15, 2018, SCANA filed the Proxy, recommending that the Company's shareholders vote to approve the Merger. JA077 (¶158). The Proxy, which generally described the process leading to the Merger and the financial analysis conducted by the Board's financial advisors, did not provide shareholders with all material information

---

[1] Proxy *available at*: https://www.sec.gov/Archives/edgar/data/754737/ 000119312518193204/ d454173ddefm14a.htm.

4849-2842-4403.v11

regarding the Merger, including information concerning the flawed sales process and the financial information underlying the financial advisors' "fairness opinions." JA077 (¶¶158-159).

Pursuant to an uninformed shareholder vote, the Merger was completed on January 2, 2019.  JA077 (¶160).

### B.    Summary of Relevant Proceedings

Plaintiffs-Appellees originally filed their initial complaints in South Carolina state court, with two direct causes of action: (1) alleging that Defendants breached their fiduciary duties to SCANA's shareholders; and (2) alleging that SCANA and Dominion aided and abetted the breaches of fiduciary duty.  *Dominion Energy*, 928 F.3d at 329, 332.

Dominion removed these state court complaints to the District of South Carolina ("District Court"), contending that the District Court had jurisdiction over Plaintiffs-Appellees' claims pursuant to the Class Action Fairness Act of 2005 ("CAFA").  *Id.*  By relying on CAFA, Dominion conceded that Plaintiffs' claims in this litigation were ***class*** action claims (and not derivative claims) belonging to SCANA's shareholders (and not SCANA).

- 8 -

On March 14, 2018, plaintiff Warren filed a Motion to Remand on the basis that the action fell within the exceptions to CAFA dealing with (1) covered securities, (2) internal affairs, and (3) breaches of fiduciary duty.  *See, e.g.*, *City of Warren Police and Fire Retirement System v. SCANA Corporation, et al.*, Case No. 3:18-cv-00509-MBS (D.S.C.), Order on Motions to Remand, ECF No. 60.  On June 27, 2018, the District Court granted the motion to remand and remanded the action to state court.  *Id*.  Thereafter, plaintiff Metzler moved for remand, which was granted for the same reasons.  JA020.

Dominion petitioned this Court for permission to appeal the remand orders.  *Dominion Energy*, 928 F.3d at 329.  This Court granted the petition for review and reversed the District Court's remand orders on the grounds that while there was no dispute that the direct breaches of fiduciary duty claims were within CAFA's removal exceptions, the aiding and abetting claim did not fall into any exception.  *Id*. at 336-37.

On August 2, 2019, Plaintiffs-Appellees filed the consolidated, amended Complaint with the District Court.  JA021.  The Complaint alleged ***one*** cause of action – a direct claim for breaches of fiduciary duty against Defendants.  JA077-79 (¶¶162-167).  As a backdrop to the direct claim for breach of fiduciary duty, the

4849-2842-4403.v11

Complaint set forth factual allegations concerning the fraudulent cover-up of the failed Nuclear Project. *See, e.g.*, JA061-62 (¶¶110-111). The Complaint alleged that Defendants' desire to escape liability for the fraudulent cover-up of the failed Nuclear Project is what led to the Merger. *See, e.g.*, JA030-31, JA070, JA072 (¶¶6, 137, 413). The Complaint alleged that Defendants conducted a fire sale process to sell the Company after their fraudulent cover up of the failed Nuclear Project was exposed. *See, e.g.*, JA030-31 (¶5).

On November 14, 2019, Defendants filed a motion to dismiss the Complaint on the grounds that it failed to state a claim under Fed. R. Civ. P. 12(b)(6) ("Motion to Dismiss"). JA022, JA082. In their Motion to Dismiss, Defendants asserted that Plaintiffs-Appellees had alleged "two starkly different" claims in the Complaint. JA115. Defendants conceded that Plaintiffs-Appellees' allegations concerning the Merger process and Merger price were direct breach of fiduciary duty claims, but contended that Plaintiffs-Appellees' allegations concerning Defendants' mismanagement in relation to the failed Nuclear Project gave rise to separate derivative claims that belonged to Dominion. ECF No. 81-1, at 12. Defendants asserted that Plaintiffs-Appellees' "derivative claim" should be dismissed because

SCANA shareholders lost their rights to pursue derivative claims when the Merger closed.  JA116-17.

On January 8, 2020, Plaintiffs-Appellees filed their Opposition to Defendants' Motion to Dismiss.  JA084.  In their brief, Plaintiffs-Appellees explained that the Complaint adequately alleged one direct breach of fiduciary claim under three theories of liability:

- the "inseparable fraud" theory elucidated in *Arkansas Teacher Retirement Sys. v. Caiafa*, 996 A.2d 321, 323 (Del. 2010) – *i.e.*, where a corporate board undertakes a sales process to "cover [previous] massive wrongdoing";

- the theory elucidated in *In re Saba Software, Inc. Stockholder Litig.*, No. 10697-VCS, 2017 WL 1201108, at *16 (Del. Ch. Apr. 11, 2017) – *i.e.*, where a corporation has engaged in fraud, and its board rushes into a sales process while "the [c]ompany was in turmoil," fails to provide shareholders with material information, and gives shareholders a Hobson's choice between "a no-premium sale or holding potentially worthless stock"; and

4849-2842-4403.v11

- the theory elucidated in *In re Primedia, Inc. Shareholders Litig.*, 67 A.3d 455 (Del. Ch. 2013) – *i.e.*, where a corporate board fails to secure anything of value for a meritorious derivative claim subject to extinguishment in a merger.

JA090.

Plaintiffs-Appellees explained that their allegations related to Defendants' mismanagement concerning the failed Nuclear Project provided the backdrop for, and the causal link to, their direct breach of fiduciary duty claim under the "inseparable fraud" theory, but did not convert their inseparable fraud claim into a separate derivative claim. JA096-98.

The District Court agreed with Plaintiffs-Appellees' position and denied Defendants' Motion to Dismiss. JA193-96. "In the Court's view, the dispositive issue is whether the defendants negotiated the merger in bad faith and in breach of their duty of loyalty to the plaintiffs, and like Judge Hayes in the state court action, this Court is concerned with whether the defendants manipulated the merger process with an attempt to avoid accountability." JA194. The Court agreed: "[A]n otherwise pristine merger cannot absolve fiduciaries from accountability for fraudulent conduct that necessitated the merger." *Id*.

4849-2842-4403.v11

On May 27, 2020, five months after Defendants' Motion to Dismiss was filed, Appellant SCANA, who had not moved to intervene when Defendants' Motion to Dismiss was pending, filed a motion to intervene under Fed. R. Civ. P. 24(a) ("Motion to Intervene"). JA025, JA212. In its Motion to Intervene, SCANA postulated one potential interest in this litigation – a right to "control" a derivative claim, which SCANA argued was being asserted by Plaintiffs-Appellees in this litigation through the factual description of the cover up of the failed Nuclear Project. JA215.

On June 10, 2020, Plaintiffs-Appellees opposed SCANA's Motion to Intervene, arguing that the District Court had already determined that the claims in this litigation were "direct and not derivative and [thus] SCANA has no interest in them." JA227. Plaintiffs-Appellees observed: "The Motion [to Intervene] is just a thinly-disguised, non-cognizable attempt by a non-party to have the Court reconsider its decision on the Motion to Dismiss." JA228.

Plaintiffs-Appellees also explained that *even if* the factual description of Defendants' fraudulent cover up of the failed Nuclear Project gave rise to a separate derivative claim, SCANA had no legally cognizable interest in that derivative claim. SCANA had already publicly disclaimed any interest in pursuing any derivative claims. JA227. Moreover, the District Court in a separate derivative action, *In re*

*SCANA Corp. Derivative Litigation*, No. 3:17-3166-MBS (D.S.C.) ("Federal Derivative Action"), and the South Carolina state court in the derivative action before it, *Teresa Parler v. Kevin Marsh*, C.A. No. 2017-CP-40-066221 (S.C. Ct. Comm. Pls., Richland Cty.) ("*Parler* Action") – both of which are discussed in further detail below – determined that the factual circumstances were such that it would be futile to expect SCANA to assert any derivative claim in connection with the Nuclear Project, so the right to litigate such derivative claims rested with SCANA's former shareholders, not SCANA. JA227-28.

On July 22, 2020, the District Court issued its Conference and Scheduling Order, and the parties began discussing and engaging in the fact discovery process. JA025.

On August 14, 2020, SCANA submitted a letter to the District Court, requesting that discovery be held in abeyance until the District Court ruled on its Motion to Intervene. JA026.

On August 18, 2020, Plaintiffs-Appellees submitted a response to SCANA's letter, noting:

- "SCANA has no interest in this litigation because the Court has
  already concluded that Plaintiffs' claims are direct and not
  derivative";

- "it is difficult to believe that defendants here are not already
  coordinating with SCANA and Dominion . . . McGuireWoods
  LLP – counsel for defendants in this action – also represented
  Dominion in this action . . . and represented SCANA and
  Dominion in the federal action"; and

- "SCANA has already indicated that it would seek reconsideration
  of the Court's ruling on the motions to dismiss if allowed
  intervention.  SCANA would then add an additional, unnecessary
  layer of complication to all proceedings. . . .  All this for a party
  with no actual legal interest in the outcome."

JA236-37.

On August 28, 2020, the District Court denied SCANA's Motion to Intervene

("Order Denying Intervention"), finding that SCANA lacked interest in this litigation

because the claims here had already been determined to be direct.  JA243 ("Plaintiffs'

claims constitute direct claims against Defendants.").

- 15 -

4849-2842-4403.v11

On September 4, 2020, SCANA filed a notice of appeal of the Order Denying

Intervention.  JA244.

> ### C.    Summary of Other Litigation Concerning the Nuclear Project

Former SCANA shareholders have filed two derivative actions, one in South

Carolina state court (which is still pending), and one in the District Court (which has

been dismissed).

The Federal Derivative Action was an action filed in the District Court before

Judge Seymour.  The complaint in the Federal Derivative Action alleged a derivative

claim for the benefit of nominal defendant SCANA against Defendants and four other

SCANA directors/officers for their misconduct in relation to the Nuclear Project that

damaged SCANA.  *See In re SCANA Corp. Derivative Litig*., No. CV 3:17-3166-

MBS, 2018 WL 3141813, at *2 (D.S.C. June 27, 2018).[2]

SCANA, with the Defendants, filed a motion to dismiss the complaint in the

Federal Derivative Action, arguing that the plaintiffs failed to plead demand futility.

*Id*.  The District Court disagreed, and denied the motion.  *Id*.

---

[2]    Unless otherwise noted, all emphasis is added, and citations and footnotes are omitted.

4849-2842-4403.v11

After Dominion consummated the Merger, SCANA with the defendants filed a motion for judgment on the pleadings, seeking dismissal of the complaint once again. *In re SCANA Corp. Derivative Litig.*, No. CV 3:17-3166-MBS, 2019 WL 4162377, at *1 (D.S.C. Sept. 3, 2019).  SCANA asserted that "because Plaintiffs no longer possess SCANA stock, they no longer have standing to maintain this action."  *Id.*

The District Court granted the motion and dismissed the Federal Derivative Action, explaining that "[b]y virtue of the merger," the "asset represented by the within derivative litigation vested in Dominion."  *Id.* at *3.

The *Parler* Action  is pending before the Court of Common Pleas for the Fifth Judicial Circuit, County of Richland, South Carolina (the "State Court").   The complaint in the *Parler* Action alleges a derivative claim against Defendants and two other SCANA directors/officers in connection with their misconduct in relation to the Nuclear Project that damaged SCANA.  *Crangle v. Marsh, et al.*, No. 2017-CP-40-5791, slip op. at 2 (S.C. Ct. Comm. Pls., Richland Cty. Sept. 6, 2018) ("*Parler* MTD Order").[3]  The derivative allegations in the Federal Derivative Action and *Parler* Action are collectively referred to herein as the "Derivative Claims."

---

[3] Courts are entitled to "take judicial notice of . . . the records of an inferior court in other cases."  *United States v. Wilson*, 631 F.2d 118, 119-20 (9th Cir. 1980); *accord,*

4849-2842-4403.v11

In the *Parler* Action, SCANA moved to dismiss the State Court complaint,

arguing that the complaint failed to plead demand futility.  *See Parler* MTD Order.

The State Court denied SCANA's motion to dismiss, holding that the Derivative

Claims were "sufficient to make the required threshold showing of a substantial

likelihood of personal director liability and, consequentially, to show a reasonable

doubt that the board could have responded to a demand with the exercise of

independent and disinterested business judgment, thus excusing demand."  *Id*. at 5.

After Dominion consummated the Merger, SCANA again moved to dismiss the

State Court complaint, on the basis that the "[M]erger eliminated all SCANA stock,

and thus, [the plaintiffs] and all other SCANA stockholders now lack standing to

pursue the claims against the defendants."  *Todd v. Marsh, et al.*, No. 2017-CP-40-

06621, slip op. at 6 (S.C. Ct. Comm. Pls., Richland Cty. Mar. 18, 2020) ("*Parler*

---

*e.g., Duckett v. Godinez*, 67 F.3d 734, 741 (9th Cir. 1995) (court may "take judicial
notice of proceedings in other courts, whether in the federal or state systems"); *Lyons
v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999) (taking notice on appeal of records in
another proceeding); *Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990) ("federal
courts may take judicial notice of proceedings in other courts").  And notice "may be
taken at any stage of the proceeding," Fed. R. Evid. 201(d), "whether in the trial court
or on appeal."  *See* Advisory committee's note to [former] Fed. R. Evid. 201(f) [which
is now 201(d)].

- 18 -

Intervention Order"). As the State Court observed, the defendants "desire[d] the termination of this case without any inquiry into the merits of the allegation." *Id.*

The State Court denied SCANA's motion, noting that "South Carolina jurisprudence requires a fact based equitable analysis" and holding that plaintiff Parler had the right to maintain the derivative suit against the defendants. *Id.* at 7-8, 13.

## D.    Recent Communications with SCANA

On November 5, 2020, Plaintiffs-Appellees' counsel wrote a letter to SCANA's counsel proposing an efficient path forward. Plaintiffs-Appellees reasserted that the District Court was correct in finding that the Complaint's factual description of Defendants' fraudulent cover up of the failed Nuclear Project did not convert Plaintiffs' inseparable fraud claim into a derivative claim, and even if it did, SCANA did not have any legally cognizable interest in the Derivative Claims, as explained in the rulings in the Federal Derivative Action and *Parler* Action.[4] However, in an attempt to move this litigation forward, Plaintiffs-Appellees offered to agree to permissive intervention of SCANA in the litigation. To avoid the potential disruption

---

[4]    Plaintiffs-Appellees have contemporaneously filed an unopposed motion with the District Court requesting that these letters be made part of the record on appeal. ECF No. 145. SCANA has indicated that it does not object to Plaintiffs-Appellees' reliance on the Letters in this appeal.

and delay from SCANA's intervention, Plaintiffs-Appellees wrote: "Our only condition is that your client does not file any motions that duplicate any previous motions that Judge Seymour has already ruled upon." ECF No. 145.

On November 16, 2020, SCANA responded, confirming that it was refusing the proposal. SCANA stated: "SCANA seeks to intervene without any limitations or conditions." *Id*.

## SUMMARY OF ARGUMENT

As a threshold matter, this Court lacks appellate jurisdiction over SCANA's motion to intervene for several reasons. First, there is no case or controversy for this Court to address. To be allowed intervention in this action, SCANA must demonstrate it has a litigable interest to protect. Here, even if this litigation were determined to include the Derivative Claims (although the District Court correctly determined that this litigation included only direct claims, as discussed below), the State Court in the *Parler* Action and the District Court in the Federal Derivative Action have already held that SCANA does not have any right to litigate those claims following the close of the Merger. And, SCANA conceded the same in proceedings in the Federal Derivative Action, as well as in the Proxy it disseminated to SCANA's shareholders. SCANA's lack of any litigable interest that would permit intervention

- 20 -

means that there is no case or controversy, and any merits-based decision by this Court would be an impermissible advisory opinion.

Second, the appeal is a poorly disguised, impermissible attempt to seek interlocutory review of the District Court's decision on Defendants' motion to dismiss. In denying that motion, the District Court ruled that Plaintiffs-Appellees' inseparable fraud claims are direct and not derivative. The crux of SCANA's appeal is that the District Court was wrong in reaching this same conclusion on its Motion to Intervene. Ergo, if this Court were to agree with SCANA, it would be overruling the District Court's decision on Defendants' motion to dismiss, on an interlocutory basis, an act that is barred by the final judgment rule.

Third, Plaintiffs-Appellees have offered to permit SCANA to intervene, even though it does not have a litigable interest in this matter, so that it can observe the proceedings. This offer moots out SCANA's appeal, depriving this Court of subject matter jurisdiction. Thus, the appeal must be dismissed.

If the Court finds a path to reach the substance of SCANA's appeal, it should conclude that the District Court did not abuse its discretion in denying SCANA's Motion to Intervene. The District Court properly ruled, based on well-defined legal principles, that Plaintiffs-Appellees' claims are direct inseparable fraud claims, and

- 21 -

4849-2842-4403.v11

not derivative gross management claims. It was also no abuse of discretion for the District Court to look to Delaware law for its decision, as federal courts sitting in diversity are permitted to seek out persuasive authority where there is no analogous controlling state law that addresses the facts and circumstances before it. The parties have extensively looked to Delaware law in this and related proceedings, which state and federal courts often do because of Delaware's extensive expertise with corporate law.

Finally, even if the District Court's decision on the direct vs. derivative issue was an abuse of discretion, SCANA has no litigable interest in the Derivative Claims. Those claims belong to SCANA's former shareholders per Judge Hayes' decision in the *Parler* Intervention Order, and the District Court held in the Federal Derivative Action that SCANA lost possession of those claims when the Merger closed. SCANA has also conceded this point in previous court filings and in the Proxy. And, whatever possible interest SCANA could have in the Derivative Claims does not merit intervention because the Derivative Claims are already being effectively litigated in the *Parler* Action, adequately protecting any tenuous link SCANA might have to the Derivative Claims.

- 22 -

## STANDARD OF REVIEW

This Court reviews "the denial of a motion for intervention on abuse of discretion grounds." *In re Sierra Club*, 945 F.2d 776, 779 (4th Cir. 1991). The abuse of discretion standard is "'one of the most deferential standards of review.'" *Brown v. Nucor Corp.*, 785 F.3d 895, 928 (4th Cir. 2015). Under that standard, this Court "act[s] only when the decision could not 'have been reached by a reasonable jurist,'" and "reverse[s] only when 'the [trial] court's exercise of discretion, considering the law and the facts, was arbitrary and capricious.'" *Id*.

Deferential appellate review of the district court's decision is proper "for many reasons, the first of which is that Rule 24's requirements are based on dynamics that develop in the trial court and that the court is accordingly in the best position to evaluate." *Stuart v. Huff*, 706 F.3d 345, 349-50 (4th Cir. 2013). "Indeed, appellate deference is customarily appropriate where trial judges are tasked with exercising judgment based on their 'on the scene' presence." *Id*. at 350.

- 23 -

## ARGUMENT

## I.    This Court Lacks Jurisdiction

### A.    There Is No Case or Controversy

"To be justiciable under Article III of the Constitution, the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed *and* at the time it is decided."  *Ross v. Reed*, 719 F.2d 689, 693-94 (4th Cir. 1983) (emphasis in original).  To have a justiciable case or controversy, a litigant must have a "personal stake in the outcome."  *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005).  "'The requisite personal interest that must exist at the commencement of the litigation . . . must continue throughout its existence.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997).

Here, SCANA has no litigable interest in this litigation.  Even if this Court were to agree with SCANA that Plaintiffs-Appellees' inseparable fraud allegations give rise to a separate derivative claim, the result would not provide SCANA with any "requisite personal interest" in this litigation.

The South Carolina state court has determined, under South Carolina state law, that the Derivative Claims no longer belong to SCANA.  In the *Parler* Action, Judge Hayes held that a former shareholder of SCANA has the right to litigate the Derivative

- 24 -

Claims.  Under Judge Hayes' ruling, SCANA has *no* "right to control" the Derivative Claims.

Moreover, even if the Derivative Claims were not invested in SCANA's former shareholders, there is also a pre-existing, preclusive judgment in the District Court that has specifically divested SCANA of any potential personal interest in this matter.  The District Court has ruled in the Federal Derivative Action that any derivative claims that belonged to SCANA passed to Dominion as a result of the Merger by operation of statute.  *SCANA*, 2019 WL 4162377.  Relying on S.C. Code Ann. §33-31-1105(a)(2), the District Court held that "[b]y virtue of the merger, the asset represented by the within derivative litigation vested in Dominion."  *Id*.  That code provision, entitled "Effect of merger," states:

(a) When a merger takes effect:

*       *       *

(2) the title to all real estate and other property owned by each corporation party to the merger is vested in the surviving entity without reversion or impairment;

S.C. Code Ann. §33-31-1105(a)(2).

Since SCANA no longer holds title to any derivative claims, even if permitted to intervene, SCANA would be immediately dismissed from this litigation.  Thus, any

- 25 -

favorable ruling from this Court would only be an impermissible advisory opinion on a non-justiciable issue.  *See Shenandoah Valley Network v. Capka*, 669 F.3d 194, 201 (4th Cir. 2012) (citing *Flast v. Cohen*, 392 U.S. 83, 96 (1968)) ("federal courts are prohibited from issuing advisory opinions").  Thus there is no "case or controversy" that would invest jurisdiction in this Court.

## B.    SCANA Seeks this Court's Substantive Review of an Interlocutory Order

Federal courts of appeals do not review interlocutory trial court decisions. *Microsoft Corp. v. Baker*, __ U.S. __, 137 S. Ct. 1702, 1707 (2017).  They are "empowered to review only 'final decisions of the district courts.'"  *Id*.  This final judgment rule "serves several important interests," including to "preserve the respect due trial judges by minimizing appellate-court interference with the numerous decisions they must make in the pre-judgment stages of litigation."  *Flanagan v. United States*, 465 U.S. 259, 263-64 (1984).  The rule also reduces the likelihood that appellate courts will expend needless time and effort rendering abstract rulings on questions of law on an undeveloped record.  *See, e.g.*, *State of Cal. v. Harvier*, 700 F.2d 1217, 1219 (9th Cir. 1983) (agreeing that "when a legal question has serious consequences and is an issue upon which there is a diversity of opinions . . . [t]he developmental process before the district court would provide us with a better

- 26 -

foundation upon which to make our decision"); *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 631 (2d Cir. 1991) ("It does not normally advance the interests of sound judicial administration or efficiency to have piecemeal appeals that require two (or more) three-judge panels to familiarize themselves with a given case, instead of having the trial judge, who sits alone and is intimately familiar with the whole case, revisit a portion of the case if he or she has erred in part and that portion is overturned following the adjudication of the whole case.").

Consistent with the purposes of the final judgment rule, appellate courts should not entertain appeals that seek substantive review of an interlocutory decision under the guise of a final order. *Microsoft*, 137 S. Ct. at 1707.  In *Microsoft*, for example, the district court granted the defendant's motion to strike class allegations in the plaintiffs' complaint. *Id*.  The plaintiffs wished to obtain review of this interlocutory order. *Id*. at 1706.  So, ***to create an appealable final order*** and force appellate review of the class certification issue, the *Microsoft* plaintiffs stipulated to a dismissal of their claims and filed an appeal based on the final dismissal order.  *Id*. at 1711.  The Supreme Court found that the Ninth Circuit should not have entertained the appeal in these circumstances. *Id*. at 1705.  Justice Ginsburg explained that it was improper for the plaintiffs to "transform a tentative interlocutory order into a final judgment" via

- 27 -

4849-2842-4403.v11

the dismissal order. *Id*. at 1705. To permit such tactics "would erode the finality principle and disserve its objectives," "allow indiscriminate appellate review of interlocutory orders," and disturb the "'appropriate relationship between the respective courts.'" *Id*. at 1705, 1712-14; *see also Metex Corp. v. ACS Indus., Inc*., 748 F.2d 150, 156 (3d Cir. 1984) (rejecting the plaintiff's attempt to "use the form of an injunction" to obtain substantive review of a discovery order and "circumvent this limit on the jurisdiction of the courts of appeals.").

In this case, SCANA's appeal is similarly an improper attempt to obtain substantive appellate review of the District Court's interlocutory order. When denying the motion to dismiss, the District Court ruled that the claims in this litigation were direct not derivative. JA243. The District Court's ruling was not subject to immediate appeal under the final judgment rule. *See Gulfstream Aerospace Corp. v. Mayacamas Corp*., 485 U.S. 271, 275 (1988) (an order denying a motion to dismiss is not final because it "ensures that litigation will continue in the District Court"); *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 225 (4th Cir.1997) ("Ordinarily, appellate jurisdiction is lacking to hear an appeal from an order denying a Rule 12(b)(6) motion to dismiss since such an order is interlocutory in nature.").

- 28 -

In order to obtain substantive review of this order, an application would have to be made to the district court, showing that there was a "controlling" question warranting appellate review, and "***extraordinary circumstances***" were present to warrant interlocutory appeal. *See City of Charleston, S.C. v. Hotels.com, LP*, 586 F. Supp. 2d 538, 541-42 (D.S.C. 2008) (explaining that a district court had discretion to certify an issue for interlocutory appeal "certain limited circumstances," including if the order in question "'involves a controlling question of law'" and the appeal would "'materially advance the ultimate termination of the litigation'"); *id.* ("certification of an interlocutory appeal should generally be limited to extraordinary cases where significant effort and expense would be spared by appellate review prior to the entry of final judgment"). *See also In re Flor*, 79 F.3d 281, 284 (2d Cir.1996) ("[U]se of this certification procedure should be strictly limited because 'only "exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment."'").

Here, no such application was made, and there was no "controlling" question to warrant appellate review because even if Plaintiffs-Appellees' factual allegations relating to the Nuclear Project were determined to give rise to a derivative claim, and even if (in contravention of the *Parler* Intervention Order) these derivative claims

- 29 -

were considered extinguished by virtue of the Merger, Plaintiffs-Appellees' other merger claims (which are indisputably direct) would survive and the litigation would continue.  *See City of Charleston*, 586 F. Supp. 2d at 542 (a "controlling" question in the context of interlocutory appeal is "if the action would have been terminated had the district court ruled the opposite way").  In any event, this issue was not presented to the District Court and the certification procedure was side-stepped via SCANA's Motion to Intervene.

In correspondence between the parties to this appeal, SCANA has essentially conceded that it seeks to intervene only to file a seriatim, impermissible, duplicative motion to dismiss.  Plaintiffs-Appellees offered to allow SCANA to intervene permissibly, mooting out this appeal, with the only caveat that SCANA would not be allowed to file "any motions that duplicate any previous motions that Judge Seymour has already ruled upon." *See supra* at 21.

SCANA rejected the offer because it wants to intervene "without any limitations or conditions." *See supra* at 22.  This position lays bare SCANA's intention.  If permitted to intervene, SCANA will no doubt file a motion to duplicate the only substantive motion Judge Seymour has ruled on other than the Motion to Intervene – Defendants' motion to dismiss.

- 30 -

4849-2842-4403.v11

SCANA, who is working with Defendants in their efforts to dismiss all pending litigation against Defendants in connection with the Nuclear Project and the Merger, should not be permitted to circumvent the final judgment rule in this manner. SCANA's appeal should be dismissed and the litigation should proceed in the normal course. *Microsoft*, 137 S. Ct. at 1707.

### C.    SCANA's Interest in This Litigation Is Moot in Light of Plaintiffs-Appellees' Offer to Allow SCANA to Intervene

"To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review . . . ." *Arizonans for Official English*, 520 U.S. at 67 (internal quotation marks omitted); *see Honig v. Doe*, 484 U.S. 305, 317 (1988) (explaining that Article III of the Constitution limits the court's jurisdiction to "actual, ongoing controversies"); *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983) ("Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies.").

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Mootness can arise for various reasons. *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011) (quoting *BankWest, Inc., v. Baker*, 446 F.3d 1358, 1364 (11th Cir. 2006)) ("'A case can become moot either due

- 31 -

to a change in factual circumstances, or due to a change in the law.'"); *Ross*, 719 F.2d at 693-94 ("If intervening factual or legal events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented.").

SCANA's interest in this litigation became moot when Plaintiffs-Appellees offered to agree to SCANA's permissive intervention. *See supra* at 21. *Cf. Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*, 880 F. Supp. 2d 689, 693 (D. Md. 2012) (citing *Zimmerman v. Bell*, 800 F.2d 386, 390 (4th Cir. 1986)) ("Generally, a settlement offer of complete relief, whether or not accepted by the Plaintiff, will moot a claim."). *See also, e.g.*, *Abrams v. Interco, Inc.*, 719 F.2d 23, 34 (2d Cir. 1983) (affirming dismissal under Rule 12(b)(1) where defendant offered plaintiff complete relief); *Damasco v. Clearwire Corp.*, 662 F.3d 891, 895 (7th Cir. 2001) ("'Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate . . . .'"). And here, where SCANA expressly "takes no position on the substantive merits of Plaintiffs' claims," (SCANA [Proposed] Answer (ECF No. 117-1) at 1), Plaintiffs-Appellees' offer to intervene constituted an offer of complete relief and, therefore, rendered moot any further interest SCANA might have had in this litigation. *See Zimmerman*, 800 F.2d at 390 (explaining that the litigant's

- 32 -

"personal stake in the outcome had disappeared, and federal courts do not sit simply to bestow vindication in a vacuum").[5]

The lack of a justiciable case or controversy alone supports denying the appeal.

## II. The District Court Correctly Ruled that SCANA Has No Interest in This Litigation that Would Require Intervention

### A. The District Court Correctly Ruled That Plaintiffs-Appellees' Claims Are Direct and Not Derivative

Inseparable fraud claims are direct, not derivative. As the Delaware Supreme Court held, "where pre-merger fraudulent conduct makes a merger inevitable, that conduct gives rise to a direct claim that can survive the merger, but not a derivative claim." *Arkansas Teacher Ret. Sys. V. Countrywide Fin. Corp.*, 75 A.3d 888, 896 (Del. 2013). The District Court correctly so held when denying SCANA's Motion to Intervene. JA243. Thus, there was no abuse of discretion.

SCANA attempts to dig beneath the District Court's denial of its intervention motion to impermissibly attack the District Court's order on the motion to dismiss. SCANA contends that the District Court wrongly determined that Plaintiffs-

---

[5] Because "the doctrine of mootness is constitutional in nature, and therefore, not constrained by the formalities of Rule 68," Plaintiffs-Appellees did not have to satisfy any procedural formalities to effectuate their offer. *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 764 (4th Cir. 2011).

4849-2842-4403.v11

Appellees' claims fit the definition of inseparable fraud, and should have instead concluded that they are simple gross mismanagement claims which are derivative and not direct. If the Court reaches this issue, it should agree that the District Court did not abuse its discretion in reaching this conclusion.

As Plaintiffs-Appellees made clear in their argument opposing the motion to dismiss, the SCANA Board's misconduct and gross mismanagement that led to the failed Nuclear Project formed the backdrop to Plaintiffs-Appellees' inseparable fraud claims, but the claims are distinct. Plaintiffs-Appellees agree that the SCANA Board's failure to effectively oversee and manage the Nuclear Project, with its missed deadlines and cost overruns, and their decisions not to address the issues or disclose the problems to the market as they became aware of them, is all derivative harm to SCANA and its shareholders collectively, and not individually. These are indeed classic claims of "director mismanagement [that] may be brought derivatively on behalf of the corporation, not directly." ECF No. 81-1, at 23.

While there is a causal link between injury caused to SCANA by Defendants' fraudulent cover up of the failed Nuclear Project and Plaintiffs-Appellees' inseparable fraud claims, as the District Court correctly recognized, the harms are distinct. An inseparable fraud claim is well-described as a cause of action where "directors cover

- 34 -

massive wrongdoing with an otherwise permissible merger." *Caiafa*, 996 A.2d at 323.

"[I]n order to state a claim of inseparable fraud, a plaintiff must plead facts from

which it would be reasonably conceivable that (1) a defendant engaged in serious

misconduct before a merger that constitutes a direct claim and (2) the merger must

have been 'necessitated' or made 'inevitable' by that misconduct." *In re Massey

Energy Co. Deriv. & Class Action Litig.*, 160 A.3d 484, 502 (Del. Ch. 2017).

Whether a claim is direct turns on who is injured, and who will recover from that

injury.  *See* JA242 (citing *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d

1031, 1039 (Del 2004)).

The District Court correctly concluded that under this analysis, Plaintiffs-

Appellees' claims constitute direct inseparable fraud claims.  The District Court

analyzed Plaintiffs-Appellees' allegations that "the substantial liability Defendants

faced in numerous regulatory and legal proceedings because of their well-documented

wrongful misconduct caused Defendants to pursue the merger in an attempt to cover

up that wrongdoing and to absolve themselves of liability" and that "Defendants

deprived Plaintiffs of the value of their investment in SCANA."  *See* JA243.  The

District Court recognized, correctly, that "[i]f true, Plaintiffs' claims constitute direct

4849-2842-4403.v11

claims against Defendants," *id.*, because SCANA's shareholders were directly harmed and will benefit from any recovery.[6]  This conclusion was not an abuse of discretion.

SCANA contends that the District Court's decision conflicts with the conclusion reached on the direct vs. derivative issue in *Massey*.  But *Massey* actually supports the District Court's decision, as Plaintiffs-Appellees argued at the hearing on the Motion to Dismiss.  In *Massey*, a coal company failed to monitor safety compliance at a coal mine in West Virginia leading to a tragedy at the Upper Big Branch coal mine.  The subsequent investigations subjected the Massey board and its

---

[6]  To the extent SCANA is suggesting that any and all breach of fiduciary duty claims "must be pursued through a derivative, and not an individual, action" under South Carolina law (*see* SCANA Opening Br. at 23), that position is without merit. *See Patterson v. Witter*, 821 S.E.2d 677, 687 (S.C. 2018) ("'If misconduct by the management of a corporation has caused a particular loss to an individual stockholder, the liability for the mismanagement is an asset of the individual stockholder.  Of course, a suit based on the misconduct can be brought by the individual stockholder.'"); *Brown v. Stewart*, S.E.2d 676, 684 (S.C. Ct. App. 2001) (relied on by SCANA) (quoting same).  In fact, "'[w]hen determining whether a claim is derivative or direct, some injuries affect both the corporation and the stockholders; if this dual aspect is present, ***a plaintiff can choose to sue individually***.'"  *Patterson*, 821 S.E.2d at 687.  As noted, the cases relied on by SCANA agree, and unlike here involve claims alleging harm directly to the corporation.  *See Brown*, 557 S.E.2d at 684 (alleging that the defendants diverting assets belonging to the company); *Rivers v. Wachovia Corp.*, 665 F.3d 610, 614 (4th Cir. 2011) (alleging that the defendants' misrepresentations damaged the value of the company, not a merger case); *Clearwater Tr. v. Bunting*, 626 S.E.2d 334, 339 (S.C. 2006) (alleging that the defendants wrongfully approved stock options diverting corporate funds).

- 36 -

executive team to regulatory scrutiny and criminal convictions. As a result, the company's stock price plummeted, which the stockholder alleged caused the Massey board to enter into a merger at an unfair price. The *Massey* court rejected the stockholders' contention that the facts set forth a claim for inseparable fraud.

But the *Massey* court also set forth precisely why the claims before it differed from the facts of *Countrywide* and thus did not give rise to a direct inseparable fraud claim. In *Massey*, there was no allegation that "the protagonist behind Massey's abysmal safety record . . . engaged in misconduct ***to secure personal benefits for themselves to the detriment of any Massey stockholder separately or individually***" such as selling stock at inflated prices or "engag[ing] in any other form of self-enrichment through the pursuit of the alleged 'business plan of willfully disregarding both internal and external safety regulations.'" *Massey*, 160 A.3d at 504 (emphasis in original). In *Massey*, there was also no allegation of fraudulent concealment of "the Company's disregard of safety." *Id*. at 505. And, critically, in *Massey* there was no support in the underlying record "that the Massey Board's pre-Merger conduct necessitated the [m]erger" which conflicted with the premise in *Countrywide* that "a merger was necessitated or made inevitable by the challenged pre-merger conduct." *Id*. at 506.

- 37 -

These distinguishing factors, absent from *Massey*, are all present here. Plaintiffs-Appellees allege that Defendants engaged in their misconduct to secure personal benefits for themselves in the form of executive compensation that they would not have received if they had been honest with shareholders instead of keeping the truth from the market. Plaintiffs-Appellees also plead that Defendants fraudulently covered up their conduct leading to criminal convictions, which is also a matter of public record. And Plaintiffs-Appellees allege that the Merger was undertaken and made inevitable by Defendants' misconduct, driven by their desire to obtain indemnification from Dominion much broader than SCANA could legally provide, along with anticipated extinguishment of any derivative claims. Because these allegations are present in this action, the District Court correctly concluded that the Complaint direct inseparable fraud claims, as in *Countrywide*, and not gross mismanagement derivative claims, as in *Massey*.

The District Court did not impermissibly import Delaware law, as SCANA contends. South Carolina often looks to Delaware corporate law. *See, e.g.*, *Santee Oil Co., Inc. v. Cox*, 217 S.E.2d 789, 791 (S.C. 1975) ("the courts of Delaware, the home of so many corporations, have had fairly frequent occasion to define and apply such terms under corporation law similar to ours"); *Carolina First Corp. v. Whittle*, 539

- 38 -

S.E.2d 402, 408-09 (S.C. Ct. App. 2000)).  SCANA concedes this in its opening

brief.  SCANA Opening Br. at 27.

There is nothing impermissible with a trial court looking to persuasive authority

in the absence of any South Carolina state law even marginally on point, as is the case

here.  SCANA does not cite to any analogous case in South Carolina, and Plaintiffs-

Appellees were unable to find any caselaw with a fact pattern that resembles this

matter.

Where, as here, "the state law is not settled, it is the function of the federal

courts in this diversity suit to determine what the South Carolina Supreme Court

would likely decide if presented with the identical issue." *Louthian v. State Farm*

*Mut. Ins. Co*., 493 F.2d 240, 242 (4th Cir. 1973) (looking to other states' laws,

explaining –"[t]he result we reach is supported by the decisions of the highest court of

every jurisdiction which has considered the question raised by this case."); *see*

*also Brendle v. Gen. Tire & Rubber Co*., 505 F.2d 243, 245 (4th Cir. 1974) ("A

federal court, sitting in North Carolina in a diversity case, must apply the law as

announced by the highest court of that state or, if the law is unclear, as it appears the

highest court of that state would rule."); *Liberty Mut. Ins. Co. v. Triangle Indus*., *Inc*.,

957 F.2d 1153, 1156 (4th Cir. 1992) (holding that if state law is unclear federal courts

- 39 -

must predict the decision of the state's highest court). Because South Carolina law is silent, or at least unsettled, on the relevant issues, the District Court appropriately looked beyond South Carolina to ascertain what the South Carolina Supreme Court would likely hold.[7]

Accordingly, the District Court did not abuse its discretion in denying the Motion to Intervene because Plaintiffs-Appellees' inseparable fraud claim is direct and not derivative.

## B.    SCANA Has No Interest in Any Derivative Claims

As discussed *supra,* even if this litigation included the Derivative Claims, SCANA no longer holds in interest in them.  Pursuant to Judge Hayes' ruling in the *Parler* Intervention Order, those claims are now being pursued by a former SCANA

---

[7]    *Grayson v. Anderson*, 816 F.3d 262, 272 (4th Cir. 2016), which SCANA relies on, is not on point.  In *Grayson*, this Court declined to import a ***new cause of action*** into South Carolina law for ***aiding and abetting*** a breach of fiduciary duty.  Here the District Court did not adopt a new cause of action.  An inseparable fraud claim is simply a vehicle to plead a direct claim for breach of fiduciary duty.  *See Arkansas Teacher Retirement Sys. v. Countrywide Fin. Corp.*, 75 A.3d 888 (Del. 2013).  The District Court permissibly looked to a factual scenario in another jurisdiction that adequately captured the allegations underlying a claim for breach of fiduciary duty, a claim that indisputably exists under South Carolina law.  Interestingly, after *Grayson* was decided this Court in *Dominion Energy* noted that South Carolina subsequently adopted a cause of action for aiding and abetting a breach of fiduciary duty. *Dominion Energy*, 928 F.3d at 331-32.

- 40 -

4849-2842-4403.v11

shareholder in an active litigation.  And, even if that were not the case, SCANA would

be bound by the District Court's decision in the Federal Derivative Action, which held

preclusively that the Derivative Claims were assets that "vested in Dominion."[8]

SCANA has already conceded that it no longer holds an interest in the

Derivative Claims in court filings in the Federal Derivative Action, and in filings with

the SEC.  In the Federal Derivative Action, SCANA took the following position:

> The Proposed Merger, if consummated, would not eliminate the
> derivative claims or the Individual Defendants' potential liability
> therefore.  Instead, the derivative claims – which now belong to SCANA
> – would simply become the property of Dominion, which would then
> have the right to pursue the claims against the Individual Defendants.  At
> that point, Plaintiffs – who would then be Dominion shareholders by
> virtue of the merger – could seek to pursue the claims on behalf of
> Dominion in a so-called "double derivative" action.  *See Lambrecht v.
> O'Neal*, 3 A.3d 277, 281-83 (Del. 2010) (discussing the nature of double
> derivative actions in the context of intervening mergers that divest the
> original shareholder plaintiff of standing to maintain the derivative
> action brought originally on behalf of the acquired corporation).

*In re SCANA Corp. Derivative Litig.*, No. 3:17-cv-03166-MBS, 2018 WL 935673

(D.S.C. Feb. 6, 2018).

---

[8]    The same result would obtain under Delaware law.  As recently reconfirmed
by the Delaware Supreme Court in *Lambrecht v. O'Neal*, 3 A.3d 277, 281-84 (Del.
2010), when a merger occurs, any outstanding derivative claims that belong to the
seller pass to the buyer "as a matter of statutory law."

- 41 -

And, in the Proxy, SCANA told its shareholders and the investing public at large that:

> Although the underlying claims of SCANA asserted in the derivative actions would survive the closing of the merger, those claims would become controlled by Dominion Energy after the merger . . . . If the claims asserted in the derivative actions have not been resolved prior to the effective time of the merger, the Dominion Energy board may have the opportunity to determine whether it is in the best interests of Dominion Energy shareholders to pursue those claims.

Proxy at 23.

Thus, SCANA has no interest in any derivative claims that could exist in this, or any other, litigation.

### C.    If SCANA Had an Interest in this Litigation, Its Interest Would Be Adequately Protected Without Intervention

There is no need for SCANA to intervene in this action even if it did have a litigable interest (which it does not).  The Derivative Claims are already being effectively litigated in the *Parler* Action.  In *Parler*, Judge Hayes held that former SCANA shareholder Teresa Parler had standing to pursue the Derivative Claims.  Ms. Parler is actively litigating those claims with the assistance of her counsel, Bragar Eagel & Squire, P.C., who is also counsel for plaintiff Metzler in this case.  Thus any interest SCANA, or Dominion may have in the Derivative Claims is already being protected by a former SCANA shareholder with every incentive to push for a positive

- 42 -

outcome.  And SCANA remains a nominal defendant in the *Parler* Action, meaning that it has access to the proceedings as they develop.

Such interests, if they exist, are also protected by Defendants in this action. Defendants carried SCANA's water during the motion to dismiss proceedings by arguing that Plaintiffs-Appellees' inseparable fraud claims are derivative and not direct, and Defendants will be in a position to make the same arguments in this Court, at the appropriate time, following a final judgment.

In contrast, neither SCANA nor Dominion has any interest in prosecuting the derivative claims.  SCANA has twice moved to dismiss the derivative claims, conceding that even if this Court gave the derivative claims back to it, it would do the same thing again.

This analysis would pertain even more forcefully to Dominion if it tried to intervene in this action on the same basis as SCANA.  Dominion has indemnified the former SCANA directors for liability in any derivative action.  Thus, if Dominion had an interest in the claims it would have no reason to pursue them because it would essentially be suing itself.  *See Primedia*, 67 A.3d at 477.  And Dominion has already conceded that SCANA's claims are direct and not derivative by removing this action

- 43 -

to federal court based on CAFA.  It would be judicially estopped from contending

otherwise now.

## CONCLUSION

For the reasons discussed above, this Court should dismiss the appeal for lack

of jurisdiction, or affirm the District Court's order denying intervention.

## STATEMENT CONCERNING ORAL ARGUMENT

For the reasons set forth above, Plaintiffs-Appellees believe that this appeal

should be dismissed on the threshold question of appellate jurisdiction, which does not

require oral argument by the parties.  If the Court, however, believes that more

substantial issues are raised in this appeal that warrant consideration, Plaintiffs-

Appellees believe that oral argument would be helpful based on the complexities of

the underlying litigation.

DATED:  December 2, 2020       ROBBINS GELLER RUDMAN
                                 & DOWD LLP
                                 DAVID T. WISSBROECKER


                                 s/ David T. Wissbroecker
                                 DAVID T. WISSBROECKER

- 44 -

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
dwissbroecker@rgrdlaw.com

MORTON & GETTYS
DANIEL J. BALLOU
(SC Federal Bar No. 6125)
Fountain Park Place
331 E Main Street, Suite 300
Rock Hill, SC  29731
Telephone:  803/366-3388
803/366-4044 (fax)
dan.ballou@mortongettys.com

BRAGAR EAGEL & SQUIRE, P.C.
LAWRENCE P. EAGEL
MELISSA A. FORTUNATO
810 Seventh Avenue, Suite 620
New York, NY  10019
Telephone:  212/308-5858
212/486-0462 (fax)
eagel@bespc.com
fortunato@bespc.com

- 45 -

CHAPPELL SMITH & ARDEN, P.A.
MARK D. CHAPPELL
GRAHAM L. NEWMAN
2801 Devine Street, Suite 300
Columbia, SC  29205
Telephone:  803/929-3600
803/929-3604 (fax)
mchappell@csa-law.com
gneman@csa-law.com

Counsel for Plaintiffs-Appellees

- 46 -

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9,079 words, excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Times New Roman) using Microsoft Word 2016.

Date: December 2, 2020                    s/ David T. Wissbroecker
                                          DAVID T. WISSBROECKER

                                          ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                          655 West Broadway, Suite 1900
                                          San Diego, CA 92101-8498
                                          Telephone: 619/231-1058
                                          619/231-7423 (fax)

                                          E-mail: dwissbroecker@rgrdlaw.com

4849-2842-4403.v11

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on December 2, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the Court's electronic notification list.

s/ David T. Wissbroecker
DAVID T. WISSBROECKER

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  dwissbroecker@rgrdlaw.com

4849-2842-4403.v11